United States v. Northam Trading Corp.

No. 4537.—Invoices dated Berlin, Germany, June 21, 1933, etc.
Entered at New York July 3, 1933, etc.
Entry No. 700463, etc.

Second Division, Appellate Term

(Decided March 10, 1939)

Webster J. Oliver, Assistant Attorney General (Daniel I. Auster, special attorney), for the appellant.
James W. Bevans for the appellee.

Before Tilson, Kincheloe, and Dallinger, Judges

Tilson, Judge: This is an application for review, filed by the Government, against the decision and judgment of the trial court, wherein the court held each of the appraisements herein involved to be null and void, because the record satisfied the court below that no such designation of the merchandise was made by the collector as is contemplated by section 499 of the Tariff Act of 1930, and also because there was a failure to comply with the statute in regard to the examination of the proper number of packages.

The merchandise the dutiable value of which is here involved consists of so-called strike-on-the-box safety matches imported from Holland, upon which the appraiser advanced the value for regular duty purposes, and also made a report of dumping under the provisions of the Antidumping Act of 1921.

The appeal in reappraisement 116411–A reads as follows:

Pursuant to the provisions of Section 501 of the Tariff Act of 1930, we hereby appeal from the appraisement by the United States Appraiser to a reappraisement by a Judge of the United States Customs Court, upon certain on all items. advanced, *including question of dumping.* [Italics ours.]

The above is customs Form 4313 and is printed by the United States Government Printing Office. Each of the appeals before us contains. the statement: "on all items advanced, including question of dumping." Entry 700463 in reappraisement 116411–A covered 265 cases of matches. The examiner did not see any of the 265 cases, but saw only one package containing one gross of each of the three brands. Appeal 116412–A covers 301 cases, or 1,775 gross of matches. Out of these 301 cases containing 1,775 gross of matches, the examiner saw only three gross. With varying percentages this is true throughout. each of the appeals listed in schedule A, hereto attached and made a.

part hereof, but in none of the appeals before us was one package of every invoice and not less than one package of every ten packages of merchandise opened and examined for the purpose of appraisement.

Counsel for appellant, in his brief filed herein, contends that the trial court may not, of its own motion, declare appraisements null and void for the alleged failure to comply with section 499 of the Tariff Act of 1930, when such question is not raised by the pleadings or by proper motion.

The power of this court to declare appraisements null and void is not limited to such cases as the attorney may see fit to make a motion to that effect. It is the duty of this court properly to examine and consider the record and therefrom determine whether or not the appraisement is null and void, irrespective of whether or not counsel has seen fit to make a motion to that effect. The power of this court in this respect is not circumscribed or fettered by the action of counsel in either making or failing to make a motion.

Counsel for appellant also contends in his brief filed herein, that the importer should give the Government written notice of its intent to declare the appraisement null and void. In the first place it is not within the power of any importer to declare an appraisement null and void, and if an importer has no power to declare an appraisement null and void there is nothing which would require him to give anyone a written notice of such intent. If it were the intent of counsel for the Government to contend that if an importer intended to move the court to declare the appraisement null and void then such importer should give Government counsel written notice of such intent, the contention is not supported by any authority cited by counsel for the Government, nor does such contention find any support in the practice before this court or in reason.

Counsel for appellant also insists that since the record shows that the designation and examination of the merchandise in this case conforms to long-continued practice and also to the customs regulations that the trial court erred in declaring the appraisements null and void. Long-continued practice, even if clothed with an element of equity and practicality, cannot nullify the plain mandate contained in said section 499 with respect to the proper examination of the prescribed number of packages. If the customs regulations prescribe any method of examination of merchandise for appraisement purposes which permits the opening and examining of less than one package of every invoice and less than one package of every ten packages of merchandise, except under very specific and limited enumerated conditions, then such regulations to that extent supersede the provisions of said section 499, and to that extent are null and void. The long list of authorities cited by counsel for the Government in support of this contention do not hold to the contrary. To sustain the contention of

counsel for the Government on this point would be an attempt to authorize the Secretary of the Treasury to rewrite any administrative provision of the tariff act to suit his pleasure. This we decline to attempt to do.

Appellant also contends that it had no formal notice of the questions to be presented at the trial of this case and that it has therefore been deprived of a fundamental right in the preparation of this case. If counsel intends to contend that it was entitled as a matter of right to a written notice from the importer prior to trial, independent of the notice of appeal, as to the questions to be presented to the court at the trial, the contention is fallacious. If counsel is contending that the notice of appeal *per se* is not sufficient to put it on notice as to the form and nature of proof required in the preparation of its defense, the case of *United States* v. *Boston Paper Board Co.*, 23 C. C. P. A. 372, T. D. 48233, is a sufficient holding against the validity of such contention.

In this case, as heretofore stated, the appeal was filed against "all items advanced, including question of dumping." In the *Boston Paper Board* case, *supra,* the appeal was simply filed against "certain printing paper." In the *Boston Paper Board* case, *supra,* the appellate court nowhere in its decision even intimated that the pleadings were not sufficient to give formal notice of the questions to be presented to the court at the trial thereof, and that the Government had thereby been deprived of a fundamental right. In deciding that case the appellate court, among other things, said:

Ordinarily, in such a case, judgment should be rendered declaring the appraisement null and void instead of dismissing the appeal. *United States* v. *Porto Rico Coal Co.*, 17 C. C. P. A. (Customs) 288, T. D. 43716.

In the case of *United States* v. *C. J. Tower & Sons,* 24 C. C. P. A. 456, T. D. 48912, the appeal was held to be sufficient. We quote the following from that case:

In the Government's supplemental brief, filed by leave of the court, there is quoted as being typical of all the appeals the text of the notice given the collector in appeal to reappraisement 12357-A, as follows:

As we consider the appraisement made by the United States Appraiser too high on 255 barrels wheat flour imported by C. J. Tower & Sons in the Michigan Central R. R. from Peterborough, Ontario, we have to request that the same may be reappraised pursuant to the law, with as little delay as your convenience will permit.

Upon an examination of the notices filed with the collector in the other four cases, we find that the foregoing is not strictly typical of all. It differs in language, although, as we view it, not in material meaning, from each of the others * * *.

In considering the sufficiency of the notice of appeal to reappraisement, it must be borne in mind that the proceeding is purely statutory and that the statute does not prescribe any form for such appeal.

    *       *       *       *       *       *       *

That which is sought in an appeal to reappraisement, whether the appeal be taken by the collector or by the importer, is, in effect, a review of the *value* found by the local appraiser.

\*    \*    \*    \*    \*    \*    \*

It is not seen, therefore, why the failure to refer to "dumping duties" in the notices of appeal in the cases here involved renders such notices "insufficient as a matter of law." They were sufficient to advise the court that appellees were dissatisfied with the appraisement, that is, with the value found by the local appraiser. It was not incumbent upon appellees to allege in their notice the values claimed by them.

If, as held in the *Tower* case, *supra*, the failure to refer to "dumping duties" did not render such notices "insufficient as a matter of law" certainly in the instant case the appeals which specifically refer to dumping duties must be held sufficient as a matter of law, and that no formal notice of the questions to be presented to the court at the trial was required or necessary.

In this connection it should also be noted that, after the importer had put in its evidence and rested at the trial, counsel for the Government did not plead surprise or indicate in any way that he desired a continuance of the case for the purpose of preparing his defense and meeting the evidence offered by the importer. In view of the long line of decisions of this and the appellate court holding that where the appraiser failed to open and examine the statutory number of packages of merchandise for the purpose of appraisement his attempted appraisement was null and void, and after the importer had established by the Government examiner that this requirement of the statute had not been complied with in the appraisement of this merchandise, it is not clear just what defense the Government could have offered, had it asked for and secured additional time.

There can be no question but that the pleadings in this case are sufficient to raise both the question as to the proper value of the merchandise and also the validity of the appraisement. That the question of the validity of an appraisement may be raised in a reappraisement proceeding was definitely held in the case of *United States* v. *Porto Rico Coal Co.*, 17 C. C. P. A. 288 T. D. 43716, in the following language:

It is evident from these authorities that the question of the validity of an appraisement may be raised and disposed of in a reappraisement proceeding before either the single justice, the appellate division, or here.

To the same effect is the holding of the appellate court in the case of *United States* v. *Central Vermont Railway Co.*, 17 C. C. P. A. 166, T. D. 43474, from which we quote the following:

If this be true, then any question affecting the appraisement, either as to its amount or legality, is properly before the Customs Court on review. If such matters are not so cognizable by the Customs Court, they could not be considered here on appeal, for this court reviews the judgment of the reappraising

court on questions of law only. *Every reasonable view of the matter supports the conclusion that if there be, in fact, no valid appraisement, the Customs Court may so find, on review.* Without attempting to express any view as to whether such a question may be raised on a protest to classification, it is sufficient to say that such question need not wait for protest, but may be raised upon reappraisement. [Italics ours.]

The holding of the trial court that the designation and examination of the merchandise in this case was not in compliance with the mandatory provisions of said section 499 was based upon facts supplied by the Government examiner and the trial court did not, as inferentially suggested by counsel for the Government, supply from imagination the essentials in which the proofs were deficient.

The Government contends in this case that because the goods were designated for examination on the wharf, and because there has been a long-continued practice of examining goods by samples, where the goods are sold by samples, at the home of the importer where the goods are otherwise liable to injury, of matches and other dangerous articles at the importer's store, the examination in this case was sufficient, since it was shown that the examination was in line with such long-continued practice, even though it was not a strict compliance with the mandatory provisions of section 499, and cited in support thereof the case of *Carey & Skinner* v. *United States*, 16 Ct. Cust. Appls. 382, T. D. 43118.

The merchandise in the *Carey & Skinner* case, *supra*, consisted of 51 entries of smoked meats, which were designated by the collector to be examined by the appraiser at Greene Street, this being the American Railway Express Co. terminal. As to the examination which the appraiser made of this merchandise the appellate court stated as follows:

*All* the goods were then examined by the appraiser at such terminal, his appraisement was returned to the collector, and the goods were released and thereupon went forward to their respective purchasers at various places in the United States.

\*        \*        \*        \*        \*        \*        \*

Upon the hearing on this protest, the importer called as a witness the examiner at the port of Buffalo and established by him that *he had,* at the direction of the collector, *examined all the packages of meat imported* at the Greene Street express office, and had made his appraisement thereon; *that no particular packages were designated for examination, but the entire shipment;* \* \* \*. [Italics ours.]

\*        \*        \*        \*        \*        \*        \*

There is, therefore, but one issue presented, namely: Did the failure of the customs officials to designate and retain samples invalidate the appraisement of the local appraiser?

From the above quotations from the *Carey & Skinner* case, *supra*, it would appear that the decision in that case could have no bearing on the question here presented. Certainly it does not support the

contention of the Government, hereinbefore set out. In that case, as found by the appellate court, all the goods in that case were examined by the appraiser; the examiner testified that he had, at the direction of the collector, examined all the packages of meat imported, that no particular packages were designated for examination, but the entire shipment.

In the instant case no one contends that all the goods were examined by the appraiser on the wharf, no one contends that the examiner had, at the direction of the collector, examined all the packages of matches imported at the wharf. Had all the goods in this case been examined at the wharf no grounds for holding the appraisement to be null and void would be present here.

In the case of *United States* v. *Michelson*, 12 Ct. Cust. Appls. 402, T. D. 40584, the appellate court said:

The Government asserts that our decisions in the Scanlan and McKesson cases are not in harmony, because in the former we held that the collector should liquidate on the basis of the appraisement of the local appraiser while in the latter it was held that the invoice value must control the liquidation.

A little examination of the opinions in those two cases, however, will disclose that in the Scanlan case the appraisement of the local appraiser was based upon an inspection of the importation, while in the McKesson case the local appraiser never saw or examined the merchandise or samples thereof, the appraisement of which was challenged. Upon this state of facts in that case the invoiced or entered value was the only value upon which liquidation could be founded, while in the Scanlan case a valid appraisement had obviously been made by the local appraiser.

In none of the cases cited by counsel for the Government has it been held that an appraisement was valid and legal where the record has shown that less than one package of every invoice and less than one package out of every ten packages imported were examined for the purpose of appraisement. The fact that merchandise may be designated by the collector for examination on the wharf, by samples where the goods are sold by samples, at the home of the importer where the goods are otherwise liable to injury, of matches and other dangerous articles at the importer's store, does not relieve the examiner or appraiser from a strict compliance with the mandatory provisions of said section 499, requiring that not less than one package of every invoice and not less than one package of every ten packages of merchandise shall be opened and examined for the purpose of appraisement, unless the Secretary of the Treasury has so decreed by special regulation.

After a careful consideration of the record before us, for the reasons hereinbefore stated, we find no error in the judgment of the trial court, and its judgment is accordingly affirmed. Judgment will be rendered accordingly.